## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 1998-CT-01020-SCT

*WEATHERSBY CHEVROLET COMPANY, INC.*

*v.*

*REDD PEST CONTROL COMPANY, INC.*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/18/1998 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LINDSEY C. MEADOR |
| ATTORNEYS FOR APPELLEE: | G. TODD BURWELL |
| | WILLIAM LARRY LATHAM |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | REVERSED- 02/01/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/22/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Redd Pest Control Company, Inc. (Redd) sued Weathersby Chevrolet Company, Inc. (Weathersby) in the Circuit Court of Sunflower County claiming negligent repairs to one of its service trucks and recovered a judgment in the amount of $18,217.39. Weathersby's Motion for Judgement Notwithstanding the Verdict, or in the Alternative, for a New Trial, was denied. Weathersby then appealed, and in a 5-4 decision, the Court of Appeals held that the jury's finding of negligence was based purely on speculation and conjecture and reversed and rendered the judgment. Redd's Motion for Rehearing was denied by the Court of Appeals. Redd then filed the Petition for Writ of Certiorari which this Court granted. Finding Redd's expert testimony combined with the circumstantial evidence was more than sufficient to make a jury question on the issue of negligence and causation, we reverse the Court of Appeals' judgment and uphold the circuit court's denial of Weathersby's Motion for JNOV/ new trial motion.

### FACTS

¶2. The Court of Appeals' majority opinion included the following recitation of facts:

A Redd Pest Control employee delivered his service truck to Weathersby Chevrolet complaining that the air conditioning unit had begun to turn on and off of its own volition. A Weathersby Chevrolet mechanic replaced the air conditioner control panel for the unit, after which the air conditioning system again worked satisfactorily. Approximately five days later and after the truck had been driven approximately 310 miles, the Redd Pest Control employee noticed smoke coming from the center area of the dashboard, which is where the air conditioner control panel is physically located. The employee discovered that the smoke was coming from a fire burning under the dash but he was

unable to extinguish the blaze. The truck and all equipment installed on the truck were destroyed. At trial, the Redd Pest Control employee testified that, from the time of repair until he noticed smoke coming from the dashboard, the air conditioning system had performed properly in all respects and that he had experienced no other problems in the truck's operation after the repair work.

Redd Pest Control commenced this action, alleging that Weathersby Chevrolet was negligent in performing the truck repairs. At trial, Redd Pest Control appeared to advance two alternative theories of negligence. One theory was that Weathersby Chevrolet had misdiagnosed the problem with the truck and that the true cause of the malfunctioning air conditioner was either a short or a loose connection in the truck's wiring system which remained unrepaired after the control panel was replaced. Another theory was that the Weathersby Chevrolet mechanic, when pulling out the control panel to replace it, had pulled the device out too far, causing the attached wiring to be scraped over a piece of bare metal framing in the dash which cut through the insulation and exposed the bare wiring. Under either scenario, according to Redd Pest Control's theory, the inevitable jostling of the wiring caused by the normal use of the truck ultimately caused the exposed or loose wiring to short out and produce the fire that destroyed the truck.

*Weathersby Chevrolet Co. v. Redd Pest ControlCo.*, No. 1998-CA-01020-COA at ¶¶ 2-3 (Miss. Ct. App. Mar. 14, 2000).

¶3. Weathersby appealed, and the matter was assigned to the Court of Appeals. The Court of Appeals found that the jury's verdict finding Weathersby negligent was based on pure speculation and conjecture, and reversed and rendered the jury verdict. Then Judge, now Justice Diaz, joined by Presiding Judge King and Judges Bridges and Lee, dissented, and opined that Redd produced enough evidence to create a jury question regarding negligence on the part of Weathersby.

¶4. The Court of Appeals majority found, as a matter of law, that the evidence was insufficient to support the jury verdict. This Court has repeatedly concluded that once the jury has returned a verdict in a civil case, the appellate court is not at liberty to overturn the verdict unless, after considering the evidence as a whole in the light most favorable to the jury's verdict, no reasonable hypothetical juror could have found as the jury found. *Bell v. City of Bay St. Louis*, 467 So.2d 657, 660 (Miss. 1985); *see also* *Junior Food Stores, Inc. v. Rice*, 671 So.2d 67, 76 (Miss. 1996). Moreover, this Court has stated that when the jury returns a verdict in favor of the plaintiff, this Court resolves all conflicts in the evidence in favor of the plaintiff. *Id.* at 75.

¶5. Further, this Court has held that when examining the decision of the trial court to deny a JNOV motion, it will examine all the evidence which supports the non-movant's case in the light most favorable to the party opposed to the motion. *Id.* at 76. All credible evidence tending to support the non-movant's case and all favorable inferences that can be reasonably drawn therefrom are accepted as true and go to the benefit of the non-movant. *Id.* If after examining the evidence, reasonable and fair-minded jurors could reach different conclusions, the jury verdict should be allowed to stand and the JNOV motion denied. *Id.*

¶6. The rationale behind this standard is found in *Travelers Indem. Co. v. Rawson*, 222 So.2d 131 (Miss. 1969):

This Court is not in the position to evaluate or weigh the truth or falsity of the witnesses who testified for appellant and appellees as is the jury, and we have so held many times. The demeanor or bearing,

the tone of voice, the attitude and appearance of the witnesses, all are primarily for inspection and review by the jury. The jury not only has the right and duty to determine the truth or falsity of the witnesses, but also has the right to evaluate and determine what portions of the testimony of any witness it will accept or reject; therefore, unless it is clear to this Court that **verdict is contrary to the overwhelming weight of the credible testimony**, this Court will not set aside the verdict of a jury.

*Id.* at 134 (emphasis added).

## ANALYSIS

¶7. The substantive issue before this Court is whether Redd presented sufficient evidence to support its claim. The Court of Appeals determined the denial of Weathersby's JNOV motion was reversible error. That decision was based upon a purported lack of evidence sustaining both the breach of duty owed by Weathersby and a reasonably close causal connection between the breach and injury. We hold that the decision by the Court of Appeals is contrary to existing law, and thus in error.

¶8. It is well established that there are four elements necessary to prove a claim of negligence:

1. A duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A breach of the duty, a failure on the person's part to conform to the standard required.

3. A reasonably close causal connection between the conduct and the resulting injury.

4. Actual loss or damage resulting to the interests of another.

*Carpenter v. Nobile,* 620 So.2d 961, 964 (Miss. 1993).

¶9. At trial, Redd necessarily relied primarily upon circumstantial evidence to establish Weathersby's allegedly negligent repair because those parts of the truck that might have offered some objective basis to determine the cause of the fire were substantially consumed in the fire. Although such a loss of probative evidence may make the matter of proof more difficult, negligence can be proved solely by circumstantial evidence. This Court has clearly held that negligence may be proved by circumstantial evidence where circumstances are such as to remove the case from the realm of conjecture and place it within the field of legitimate inference. *Kussman v. V&G Welding Supply, Inc*., 585 So.2d 700, 703 (Miss. 1991) (citing *Cadillac Corp. v. Moore*, 320 So.2d 361, 366 (Miss. 1975)); *see also* *Hardy v. K Mart Corp*., 669 So.2d 34, 37-38 (Miss. 1996); *Brown Oil Tools, Inc. v. Schmidt*, 246 Miss. 238, 246, 148 So.2d 685, 688 (1963); *Palmer v. Clarksdale Hosp*., 206 Miss. 680, 698, 40 So.2d 582, 586 (1949). The rule regarding the proof of causation from circumstantial evidence is:

Proof of the necessary factual causal connection may be by either direct or circumstantial evidence, but in the event the latter is used, it must be sufficient to make the plaintiff's asserted theory reasonable probable, not merely possible, and more probable than any other theory based on such evidence, and it is generally for the trier of fact to say whether circumstantial evidence meets this test.

57A Am. Jur. 2d *Negligence* § 461, at 441- 42 (1989) (footnotes omitted).

¶10. Moreover, if the evidence is conflicting, the jury is the sole judge of credibility of the witnesses and the

weight of their testimony. *In Re Estate of Dabney*, 740 So.2d 915, 919 (Miss. 1999); *Illinois Cent. R.R. v. Clinton*, 727 So.2d 731, 734 (Miss. Ct. App. 1998) (holding that if facts are in dispute, jury is given authority to resolve them). Under the applicable standard of review, the Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Id.* at 733. In the case at bar, if the facts considered point so overwhelmingly in favor of the appellant that reasonable men and women could not have arrived at the verdict, this Court is required to reverse the trial court, that is, affirm the Court of Appeals' decision. However, if there is substantial evidence in support of the verdict, specifically evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance of the trial court, that is reversal of the Court of Appeals, is required. *Id.*

¶11. This Court disagrees with the Court of Appeals' conclusion that the evidence presented to the jury was insufficient to support a jury verdict against Weathersby for negligent repair of Redd's truck. A review of the evidence indicates that sufficient evidence was presented by Redd to support the jury's verdict. The subject truck was taken to Weathersby to have the air conditioning control panel replaced after it was determined that it was the source of malfunction. Three and one-half business days[1] later and 310 miles after the repair work was completed, the driver saw smoke emerging from the dashboard. After the driver made an emergency stop, fire engulfed and ultimately destroyed the truck. Darrell Shavers, Weathersby's mechanic who worked on the truck, testified that he checked the freon level, several fuses, and the air conditioning panel which he replaced. Shavers demonstrated on an in-court exhibit how he replaced the unit. He also admitted that his deposition and courtroom testimonies varied considerably about what steps he took to diagnose and resolve the problematic air conditioning.

¶12. The Court of Appeals, referring to the use of the truck for three and one-half business days and 310 miles, was concerned about what it viewed as "after the passage of that much time" and the "rather intensive use of the truck." However, it is simply not an appellate court's duty to decide the meaning and importance of these facts. That is the function of the jury. Perhaps the jurors viewed this same testimony as indicative of not much time and rather limited use of the truck. These facts were certainly debatable.

¶13. The most problematic aspect of the Court of Appeals' opinion concerns its analysis of the Redd's expert witness, whom the Court of Appeals refers to as an "automobile mechanic." The Court of Appeals found in relevant part:

> In apparent recognition that the evidence alone was insufficient to make out a case of negligent repair, Redd Pest Control called an automobile mechanic as an expert witness to offer his opinion as to those acts of negligence committed by the Weathersby Chevrolet mechanic in effecting the air conditioning repair job. **This expert witness did not view the truck in the aftermath of the fire, but formed the basis of his opinion testimony on the examination of photographs of the truck, the vehicle repair order, and his review of the deposition of the Weathersby Chevrolet mechanic.**
>
> This expert first offered the opinion that the Weathersby Chevrolet mechanic may have repaired a problem that did not exist. **He based this upon his reading of the repair order that the air conditioning unit fan was "going high and low on its own." He testified that erratic blowing speeds demonstrated a wiring problem rather than a problem with the control panel itself. He dismissed the fact that the replacement of the control panel seemed to fix the problem by**

**suggesting that the pulling and tugging on the wiring necessary to accomplish the replacement of the unit may have temporarily stabilized the wiring defect until it was once again exposed by the agitation associated with driving the vehicle over the next week. The most readily apparent problem with this testimony is that the repair order does not reflect a problem with erratic blowing speeds. It quite plainly states "a/c blower cuts on and off on its own."** *This misreading of the language of the repair order by Redd Pest Control's expert negates any probative value that might otherwise attach to his opinion that the problem was in the truck's wiring and not in the control panel unit itself.* An expert witness's opinion must be founded upon facts or data "perceived by or made known to him at or before the hearing." M.R.E. 703. In this case, the expert's opinion of one possible cause of the air conditioning misfunction was based upon an assumed fact that did not exist. Whether his opinion would have been the same had he understood that the blower was cutting on and off on its own rather than merely changing speeds erratically is something that is beyond this Court's ability to measure.

*Weathersby Chevrolet Co.*, No. 1998-CA-01020-COA, at ¶¶ 9-10 (emphasis added).

¶14. The problem with the opinion of the Court of Appeals is that it is not based on the complete record. Redd's expert, Harold Watts, was much more than a mere automobile mechanic. He was, in fact, certified as a master automotive technician with thirty-two years of specialized experience in automotive electrical and air conditioning work. He also received training in fire investigation and is a member of the Mississippi Fire Investigator Association. He clearly testified that he based his opinion on the repair order, pictures of the truck, and depositions of the witnesses. The Court of Appeals apparently overlooked the fact that Watts also observed all the court testimony during the proceedings prior to his testimony which also served as a basis for his opinion. Redd's driver, Danny House, testified in part:

> No matter what you had this fan switch set on--I think--I believe that the control readout or writing is here, best I can remember. **It would go from high to low, high to low.** You'd have no control over it, no matter if you had it off or on. It didn't have no effect on it. **It would go off and on by itself, high and low.** You'd have no control over it.

(emphasis added.) Thus, regardless of the wording of the repair order, the testimony clearly reflected that the air conditioning unit was experiencing "erratic blowing speeds." Watts was of the opinion that the fire was caused by an electrical short and stated, "I base that on the testimony of the witness who saw the smoke first and then the flames."

¶15. Moreover, Watts testified that Weathersby failed to follow the diagnostic and repair procedures outlined in Chevrolet training manuals. The record indicates that Watts testified that Shavers should have checked the battery junction and all other connectors as stated in the training manuals. Watts stated that such tests were necessary to determine the cause of the problem such as a wiring circulatory problem, a loose connection, a frayed wire, or two current carrying wires. Furthermore, Watts demonstrated in-court by pulling the control panel out of the dash, the wires and the harness which held them were moved across the metal frame. Such a maneuver exposed the wires to either being cut or frayed when pulled and moved from the factory location. Although Watts did concede that in order to fix the control the panel, the wires and harness had to be somewhat disturbed, he indicated that they did not have to moved to the extent that Shavers had demonstrated in court.

¶16. Clearly, Watts's testimony was admissible and probative as to the cause of the fire. "Issues regarding

weight and credibility of the evidence are for the jury to resolve." *Eakes v. State*, 665 So.2d 852, 872 (Miss. 1995) (citing *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993)). "Factual disputes are properly resolved by the jury and do not mandate a new trial." *Eakes*, 665 So.2d at 872 (citing *McNeal v. State*, 617 So.2d 999, 1009 (Miss. 1993)). Watts's opinion was clearly founded upon facts or data "perceived by or made known to him at or before the hearing." M.R.E. 703.

## CONCLUSION

¶17. Using the applicable standard of review, this Court holds that Watts's expert testimony, combined with the circumstantial evidence, was more than sufficient to make a jury question on both the issues of negligence and causation. When the Court of Appeals determined that Watts's testimony was not credible, it improperly invaded the province of the jury by substituting its judgment for that of the jury. Moreover, the decision of the Court of Appeals was based on its erroneous perception of the record. In sum, the verdict at the trial court was not contrary to the overwhelming weight of credible testimony and should stand under the prevailing law of this state. Therefore, we reverse the judgment of the Court of Appeals, and reinstate and uphold the circuit court's denial of Weathersby's JNOV/ trial motion.

¶18. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

1. While the fire happened a week after the incident, the truck had only been used three and one-half business days before the fire.